UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHORT TERM RENTAL ALLIANCE OF SAN DIEGO, | Case No.: 22cv1831-L-BGS |
| Plaintiff, | **ORDER GRANTING IN PART MOTION TO DISMISS AND REMANDING ACTION TO STATE COURT** |
| v. | |
| CITY OF SAN DIEGO, | |
| Defendant. | **[ECF NO. 3]** |

Pending before the Court is a motion filed by the City of San Diego ("City") to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).  (ECF No. 3.)  Plaintiff Short Term Rental Alliance of San Diego ("Alliance") filed an opposition and the City replied.  For the reasons which follow, the City's motion is granted insofar as it seeks dismissal of claims alleged under federal law.  the balance of the action is remanded to State Court.

I.   **Background**

In its operative first amended complaint (ECF No. 2, "Compl.") Alliance seeks to declare void and enjoin enforcement of the City's Ordinances O-21305 and O-21464 insofar as they regulate short-term residential rentals not occupied by the host.  Alliance is an advocacy and education organization whose members include landlords and hosts

with at least one single-family short-term rental property located in the "San Diego Coastal Overlay." (Compl. ¶¶ 2-3.)

On April 14, 2021, the City adopted Ordinance No. O-21305. (Compl. ¶ 7; *see also* ECF No. 3-2 through 7, "City RJN," Ex. 1 ("O-21305").)[1]  Among other things, O-21305 regulates short-term rentals by means of a four-tier license system. (Compl. ¶ 20; O-21305 at San Diego Municipal Code ("SDMC") §§ 510.0103 and 510.0104.)  The City provides an unlimited number of Tier One and Tier Two licenses, which apply when the rental is in the host's primary residence. (Compl. ¶ 20; O-21305 at SDMC § 510.0104(b) and (c).)  On the other hand, the number of available Tier Three and Tier Four licenses is limited.  These licenses apply to whole-home short-term rentals with no host present. (Compl. ¶ 20; O-21305 at SDMC § 510.0104(d) and (e).)  Tier Four licenses are required within the Mission Beach Community Planning Area, while Tier Three licenses are required in other areas. (Compl. ¶ 20; O-21305 at SDMC § 510.0104(d) and (e).)

In part, O-21305 amended the City's certified Local Coastal Program. Accordingly, review by the Coastal Commission ("Commission") was required to certify whether the amendments were consistent with the Coastal Act. (Compl. ¶¶ 7-8; City RJN Ex. 2 ("O-21464").)  The Commission approved the amendments with changes.  These changes were adopted on June 27, 2022, as Ordinance No. O-21464. (Compl. ¶¶ 7-8; O-21464.)

Alliance alleges that O-21305, as amended for the Coastal Overlay Zone by O-21464 (collectively "Ordinance"), violates the United States and California Constitutions, the Fair Housing Act, 42 U.S.C. § 3604, and California corporation statutes.  The Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

/ / / / /

---

[1]   The Court takes judicial notice of the ordinances found at City's RJN Exs. 1 and 2. Fed. R. Evid. 201.

The City filed a motion to dismiss the complaint pursuant to Rule 12(b)(1) for lack of Article III standing and Rule 12(b)(6) for failure to state a claim.[2]  For the reasons which follow, the City's motion is granted insofar as the City seeks dismissal of federal claims.

## II.   Discussion

### A.   Article III Standing

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).[3]  Article III requires federal courts to satisfy themselves that the plaintiff has such a personal stake in the outcome of the controversy as to warrant federal jurisdiction.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

To establish Article III standing a plaintiff must show three elements:

> (1) [the plaintiff] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.. Inc.,* 528 U.S. 167, 180-81 (2000); *see also Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).  Since the elements of standing

> are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the

/ / / / /

---

[2]     All references to Rule or Rules are to the Federal Rules of Civil Procedure.

[3]     Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, and footnotes are omitted from citations.

22cv1831-L-BGS

manner and degree of evidence required at the successive stages of the litigation.

*Lujan*, 504 U.S. at 561; *see also Spokeo,* 578 U.S. at 338; *Maya*, 658 F.3d at 1068.

The moving party can make either a "facial" or "factual" attack on jurisdictional allegations.  *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020); *Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 964 (9th Cir. 2020).  A facial attack accepts the truth of the pleading allegations but asserts that they are insufficient on their face to invoke federal jurisdiction, while a factual attack contests the truth of the allegations themselves.  *See, e.g., Harris*, 980 F.3d at 699.   By relying on evidence rather than pleadings in support of its arguments (*see* City RJN Exs. 3, 4), the City has mounted a factual rather than a facial attack.  Consistently, Alliance relies on evidence in its opposition.  (*See* ECF No. 7-2, "Tavares Decl.")

The City argues that Alliance lacks organizational standing to sue on its own behalf or associational[4] standing to sue on behalf of its members.  Alliance does not dispute that it lacks organizational standing.  It opposes only on the ground that it possesses associational standing.  (*See* ECF No. 7, "Opp'n." at 10-11.)

> An organization has standing to sue on behalf of its members where: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Am. Diabetes Ass'n v. U.S. Dep't of the Army,* 938 F.3d 1147, 1155 (9th Cir. 2019).  The City argues that the interests Alliance seeks to protect with some of the claims alleged in this action are not germane to its corporate purpose, and that Alliance members would lack Article III standing because none has suffered an injury-in-fact.

---

[4]   The case law often refers to "representational" standing rather than "associational" standing used in the City's brief.  (*Cf., e.g., Am. Diabetes Ass'n v. U.S. Dep't of the Army,* 938 F.3d 1147, 1155-56 (9th Cir. 2019), *with* ECF No. 3-1, "Mot." at 12.)

The Court first turns to the issue whether the claims asserted in the Complaint are germane to Alliance's corporate purpose.  Alliance was incorporated as a nonprofit corporation under California Nonprofit Mutual Benefit Corporation Law.  (City RJN Ex. 4, "Am. Articles.")[5]  Its Certificate of Amendment of Articles of Incorporation, dated April 7, 2021, states that Alliance's purpose is to "Educate & Advocate for short term rental owners & operators [*sic*]."  (Am. Articles.)

All causes of action alleged in the Complaint, apart from the second cause of action, are based on the contention that the Ordinance unconstitutionally discriminates among different groups of property owners.  In this regard, Alliance seeks to protect interests that are germane to its corporate purpose of advocating for short-term rental owners and operators.

The City argues that Alliance lacks standing to bring its second cause of action alleging racial discrimination on behalf of guests and tenants, as their interests are not "germane" to the corporate purpose of educating and advocating for short-term owners and operators.  Alliance counters that on September 23, 2022, a few days before filing this action, it amended its bylaws sufficiently to render germane the interests of guests and tenants.  The amended bylaws read in pertinent part as follows:

> Whereas, the purposes for which the Corporation is formed are as set forth in the Articles of Incorporation, and
>
> Whereas, these purposes shall be construed broadly, and consistent with the foundational goals of the Corporation, its founding members, and its members,
>
> Accordingly, ... the Board hereby resolves and further clarifies that the purposes of the Corporation include (but are not limited to) preservation, protection, and enforcement of the Constitutional ... and other legal rights of its members and similarly situated individuals, particularly regarding affordable access to San Diego beaches .... and to prevent discrimination and or disparate impact upon guests and or renters desiring short term (and

---

[5]   The Court takes judicial notice of the articles of incorporation.  Fed. R. Evid. 201.

longer term) accommodations arising from or based upon their state or country of permanent residence, their race/ethnicity/national origin/sexual orientation, or any other factor.

(Tavares Decl. Ex. 1.)

Alliance has alleged no facts showing that guests and tenants are "similarly situated" to owner- and operator-members as required by the amended bylaws. Moreover, the amended bylaws are inconsistent with the statement of purpose in Alliance's articles of incorporation.

Under California Nonprofit Corporation Law, "[t]he bylaws may contain any provision[] not in conflict with ... the articles." Cal. Corp. Code § 7151(c). The amended bylaws seek to broaden Alliance's purpose to advocacy on behalf of tenants and guests. This contradicts the articles, which state in pertinent part as follows:

The specific purpose of this corporation is to Educate & Advocate for short term rental owners & operators.  [*sic*]

Notwithstanding any of the above statements of purposes and powers, this corporation shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of the specific purposes of this corporation.

(Am. Articles.)

Alliance has not shown that advocating on behalf of guests and tenants is germane to its corporate purposes.  It therefore lacks associational standing for its second cause of action alleging disparate impact on "Hispanics and African Americans."  (Compl. ¶¶ 32-36.)  The second cause of action is therefore dismissed without prejudice for lack of subject matter jurisdiction.

Rule 15 advises leave to amend shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

/ / / / /

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Article III standing must be present from the inception of the action, *Gonzalez v. U.S. Immigration and Customs Enforcement*, 975 F.3d 788, 803 (9th Cir. 2020), until the end, *Wittman v. Personhuballah,* 578 U.S. 539, 543 (2016).  Because it is apparent from Alliance's own corporate records that it lacked standing when it filed this lawsuit, granting leave to amend the complaint to allege standing for the second cause of action would be futile.

As to the remaining causes of action, the City further argues that none of the owner- and operator-members would have standing to assert them in their own right because Alliance has not shown that any have suffered an injury-in-fact.

> To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.

> For an injury to be particularized, it must affect the plaintiff in a personal and individual way.

*Spokeo,* 578 U.S. at 339.

When, as here, the plaintiff seeks to invalidate and forestall enforcement of a statute through injunctive and declaratory relief, he or she must "assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future." *California v. Texas,* 141 S.Ct. 2104, 2114 (2021) (emphasis in original); *see also Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger or sustaining a direct injury as a result of the statute's operation or enforcement.").  "In the absence of contemporary enforcement, ... a plaintiff

... must show that the likelihood of future enforcement is substantial." *California*, 141 S.Ct. at 2114. He or she "must be able to show, not only that the statute is invalid, but that he [or she] has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement." *Massachusetts v. Mellon,* 262 U.S. 447, 488 (1923) (quoted in *California,* 141 S.Ct. at 2114). When the plaintiff himself is an "object" of a challenged government action, "there is ordinarily little question that the action ... has caused him injury, and that the judgment preventing ... the action will redress it." *Lujan,* 504 U.S. at 561-62.

Here, one of the objects of the Ordinance are short-term rental properties in the Coastal Overlay Zone. The Ordinance requires that short-term rentals not occupied by a host apply for a limited number of Tier Three or Four licenses which are awarded according to a lottery if the number of applications exceeds the number of licenses. (O-21305 at SDMC § 510.0106(c); O-21464 at SDMC § 510.0104.) Furthermore, a host may hold only one license at a time. (O-21305 at SDMC §§ 510.0104(a), 510.0106(a).) Alliance argues that the Ordinance injures those short-term rental owners who own more than one short-term rental property in the City, as well as those who previously were not subjected to a license lottery and fail to secure a license under the new lottery system. According to Alliance, at least thirty of its members were denied a license after the initial lottery. (Tavares Decl. ¶ 4.)

Alliance has sufficiently shown that its owner- and operator-members will be directly affected by the Ordinance. Furthermore, "[i]ndividualized proof from the members is not required where, as here, declaratory and injunctive relief is sought rather than monetary damages." *Ass. General Contractors of Am. v. Metropolitan Water Distr. of S. Cal.,* 159 F.3d 1178, 1181 (9th Cir. 1998). Alliance has sufficiently established Article III standing at this stage of the case for purposes of all its claims except the second cause of action.

/ / / / /

22cv1831-L-BGS

**B.     Failure to State a Claim**

The City argues that none of the claims alleged in the Complaint are sufficient under Rule 12(b)(6) to survive the pleading stage.  A motion under Rule 12(b)(6) tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Alternatively, a complaint may be dismissed if it presents a cognizable legal theory yet fails to plead essential facts under that theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, to plead essential facts a plaintiff must allege only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff's allegations must provide "fair notice" of the claim being asserted and the "grounds upon which it rests."  *Bell Atl. Corp.*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party.  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006).  Legal conclusions need not be taken as true merely because they are couched as factual allegations.  *Bell Atl. Corp.*, 550 U.S. at 555.  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

The City moves to dismiss all of Alliance's remaining claims.  In all instances, Alliance attacks the Ordinance only with respect to the Coastal Overlay.  (*See, e.g.,* Compl. at 15.)  Alliance requests a declaration that the Ordinance is void and unconstitutional on its face and as applied and seeks an injunction against enforcement. (*Id.*)

1.     Dormant Commerce Clause

Alliance alleges that the Ordinance discriminates between Tier One and Two licenses for owner-occupied rentals and Tier Three and Four licenses for not owner-occupied rentals.  (Compl. ¶¶ 38, 39.)   Alliance claims that this "constitutes prima facie discrimination against out-of-state property owners" in violation of the dormant Commerce Clause of the United States Constitution.  (*Id.* ¶¶ 40, 43.)  Alliance contends the Ordinance violates the dormant Commerce Clause on its face and as applied.  (*Id.* ¶ 45.)

A facial challenge requires the plaintiff to meet a high burden of establishing "that no set of circumstances exists under which the Ordinance would be valid."  *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019).  Conversely, an as-applied attack does not necessarily challenge the entire statute, focusing instead on a subset of its applications or application to a specific factual circumstance, "under the assumption that the court can separate valid from invalid subrules or applications."  *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011).

> Because the difference between an as-applied and a facial challenge lies only in whether all or only some of the statute's subrules (or fact-specific applications) are being challenged, the substantive legal tests used in the two challenges are invariant.

*Id.*

Alliance's theory of the case is that Tier One and Two licenses are granted automatically "for homes where the owner also uses the property as their primary residence."  (Compl. ¶ 39.)  On the other hand, Tier Three and Four licenses for not owner-occupied short-term rentals are limited in number, are awarded by lottery, and are limited to one license per owner.  (*Id.* ¶ 38.)  Attempts by owners to license more than one property were rejected.  (*Id.* ¶ 41.)  Alliance claims that the difference between Tier One and Two licenses on one hand, and Tier Three and Four licenses on the other hand, more than incidentally benefits in-state owners while burdening out-of-state owners

because "by definition no out-of-state short-term rental owners can avail themselves of TIER I or TIER II license [*sic*]." (*Id.* ¶ 43.) Alliance contends that there is no legitimate local purpose for the distinction and that non-discriminatory alternatives exist to achieve the same goals. (*Id.* ¶ 44.)

In support of dismissal, the City relies on *Rosenblatt v. City of Santa Monica,* 940 F.3d 439 (9th Cir. 2019). *Rosenblatt* upheld a more restrictive ordinance against a dormant Commerce Clause challenge and affirmed a Rule 12(b)(6) dismissal. The Court finds it controlling.

*Rosenblatt* "prohibit[ed] property rentals of 30 days or less (vacation rentals) with an exception for rentals where a primary resident remained in the dwelling[.]" *Rosenblatt,* 940 F.3d at 442. Unlike the Ordinance here, which restricts the number of Tier Three and Four licenses (*see* SDMC §§ 510.0104(d)-(e)), the *Rosenblatt* ordinance prohibited such rentals outright. Alliance argues that the ordinances are "not identical." (Opp'n at 15.) The distinction, however, does not favor Alliance.

A two-step review applies to dormant Commerce Clause challenges to local regulations:

> [1] When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. [2] When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*Rosenblatt,* 940 F.3d at 444.

The *Rosenblatt* ordinance did not fall within the first step of the inquiry because it did not on its face regulate interstate commerce. Its only effect on interstate commerce was to "make[] travel lodging in Santa Monica less accessible, available, and affordable." *Rosenblatt,* 940 F.3d at 445. The ordinance did not prohibit vacation rentals for Santa Monica homes and penalized only conduct within Santa Monica. *Id.* at 445. Its

"vacation-rental ban" was therefore not a direct regulation of interstate commerce." *Id.* at 446. The same is true here. Although the Ordinance has the potential through lottery to restrict certain short-term rentals in San Diego, it does not directly regulate interstate commerce.

The *Rosenblatt* ordinance also did not on its face discriminate against interstate commerce. *Rosenblatt,* 940 F.3d at 448, 451. As Alliance here, Rosenblatt argued that the ordinance discriminated against out-of-state property owners by "allowing only Santa Monica residents to engage in short-term rentals." *See id.* at 450. As here, the argument was based on the exception for those short-term rentals where a primary resident was present. *See id.* The argument was rejected because the *Rosenblatt* ordinance did not require the primary resident to be the property owner; instead, the owner could authorize or instruct a long-term tenant to remain on the property while a part of it is let out to a short-term tenant. *Id.* at 450-51. Aside from not requiring that the property *owner* occupy the property during short-term rental, the same requirement applied to all owners equally, whether in-state or out-of-state. *Id.* at 451.

Much of Alliance's Complaint is based on the same misconception as the complaint in *Rosenblatt*. Contrary to Alliance's contention, the Ordinance does not target *owners*, whether they occupy the rental property or not. Instead, it distinguishes between short-term rentals based on whether they are occupied by a *host*. A host is defined as "a natural person who has the legal right to occupy the dwelling unit and to allow short-term residential occupancy." (SDMC § 510.0102.) As in *Rosenblatt*, the Ordinance does not require that the property owner act as the host. While an owner may reside at the property and act as the host, the owner may also authorize a long-term tenant to fulfill that role.

Alliance's remaining allegation that the Ordinance discriminates against interstate commerce because it limits out-of-state owners to only one license application regardless of how many properties they own (Compl. ¶ 41) is equally unavailing. The one license limitation applies to *hosts* rather than owners. (SDMC § 510.0104(a) ("A host may only

hold one license at a time.") (emphases omitted).)  Furthermore, the same limitation applies to all license applicants, including in-state property owners who own more than one property they wish to rent.  (*See id.* ("A license is required for all short-term residential occupancy." (emphases omitted)).)

Alliance urges the Court to disregard *Rosenblatt* in favor of *Highnell-Stark v. City of New Orleans,* 46 F.4th 317 (5th Cir. 2022), which declined to follow *Rosenblatt*. *Id.* at 326 n.16.  *Highnell* held that the city's residency requirement for short-term rentals discriminated against interstate commerce.  *Id.* at 326.  It distinguished *Rosenblatt* by noting that although the Santa Monica short-term rental ordinance "requir[ed] someone to live on the property full time, ... that person did not need to be the owner of the property." *Id.* n.16 (citing *Rosenblatt*, 940 F.3d at 450-51).  As discussed above, the Ordinance here also does not require that the property owner act as the host and does not impose a residency requirement on the property owners.  *Highnell* is therefore not persuasive.  For the foregoing reasons, the Ordinance does not discriminate against interstate commerce.

Finally, the *Rosenblatt* ordinance did not on its face fall within the second step of the dormant Commerce Clause inquiry.  *Rosenblatt,* 940 F.3d at 451-53.  At the second step, the Court considers whether an ordinance with indirect effects on interstate commerce is based on legitimate local interest and whether the burden on interstate commerce clearly exceeds local benefits.  *Id.* at 444, 451.  An ordinance is upheld if "it effectuates a legitimate local public interest unless the burden imposed on interstate commerce is *clearly excessive* in relation to the putative local benefits."  *Id.* at 451 (emphasis in orig.).  At the pleading stage, "the plaintiffs need to plead specific facts to support a plausible claim that the ordinance has a discriminatory effect on interstate commerce."  *Id.* at 452.

The Ordinance includes extensive legislative findings and a detailed statement of purpose.  One stated purpose is to preserve the available housing inventory.  In this regard the City found that "[a]pproximately 16,000 dwelling units [were] being used for short-term residential occupancy ('STRO'), *i.e.,* 'occupancy of less than a month,'

preventing the use of those units for permanent housing[.]" (O-21305 at 2.) "[T]he City desire[d] to preserve its available housing stock[.]" (*Id.*) It found that there was a difference when the dwelling unit offered for short-term rental was occupied by the host because "home sharing," *i.e.,* STRO in the host's primary residence, "does not displace the primary resident from the premises and does not cause as significant a removal of existing housing stock from the market and negatively impact the vacancy rate." (*Id.* at 3.) Preservation of housing stock is a proper exercise of the City's police power in regulating land use. *See Rosenblatt*, 940 F.3d 442, 443.

Another stated reason for distinguishing between host-occupied and not host-occupied short-term rentals is "to preserve ... the quality of life in residential neighborhoods and to alleviate the impacts to residential neighborhoods caused by STRO [¶] such as those relating to noise, trash collection, and parking." (O-21305 at 2.) The City "determined that most negative impacts to neighborhood communities arise from whole-home STRO [but] the impacts are less when the STRO occurs within the primary residence of the host." (*Id.* at 3.) Preservation of the neighborhood character and quality of life are legitimate purposes for government regulation. *See Rosenblatt,* 940 F.3d at 443; *see also Nelson v. City of Selma*, 881 F2d 836, 839 (9th Cir. 1989).

Alliance's allegation that these are not legitimate local purposes (Compl. ¶ 44) are unsupported by law, and its conclusory claims that "ample" non-discriminatory alternatives exist (*id.* ¶¶ 44, 28) are insufficient. "Courts may not assess the benefits of a state law or the wisdom in adopting it" and must "presume the law serves the city's legitimate interests" unless the plaintiff plausibly alleges that the law imposes a significant burden on interstate commerce. *Rosenblatt*, 940 F.3d at 452.

For the foregoing reasons, Alliance has not alleged that the Ordinance on its face violates the dormant Commerce Clause.

/ / / / /

Alliance also challenges the Ordinance as applied in the license application process:

> [T]he online [license] application portal opened ... on or around October 3rd, 2022, and applicants were only permitted to submit a single license application for a single property.  Any applicant seeking licenses for more than one property, including out of state [*sic*] owners, ... by operation of the facial terms of the ordinance [*sic*], and by the actual implementation of the application system, had any attempt to procure licenses for multiple properties rejected and or refused.

(Compl. ¶ 41; *see also id.* ¶ 9.)  The City's application of the Ordinance through the license application process does not deviate from its written provisions.  Alliance concedes this.  (*See id.* ¶ 9 ("pursuant to the express provisions of the ORDINANCE").)  Alliance's claim that the Ordinance as applied violates the dormant Commerce Clause therefore fails on the same grounds as its facial challenge.

Accordingly, Alliance has not stated a claim for violation of the dormant Commerce Clause of the United States Constitution.  Based on the language of the Ordinance and its application through the license lottery process, any amendment of this claim is rendered futile by *Rosenblatt*.  The claim is therefore dismissed without leave to amend.

### 2.   Inverse Condemnation

Alliance alleges that the Ordinance interferes with the owners' right to use their property as short-term rentals and "deprive[s them] of their ability to secure a reasonable rate of return" without any compensation in violation of the Takings Clause of the Fifth Amendment of the United States Constitution.  (Compl. ¶¶ 54-56.)  Alliance's theory is that the Ordinance effectuates a non-categorical taking.  (*Id.* ¶ 56.)  The City argues that the claim should be dismissed because Alliance cannot allege the facts necessary to state the claim.

> The text of the Fifth Amendment ... requires the payment of compensation whenever the government acquires private property for a public purpose,

whether the acquisition is the result of a condemnation proceeding or a physical appropriation.  But the Constitution contains no comparable reference to regulations that prohibit a property owner from making certain uses of her private property.

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 321-22 (2002).  Nevertheless, "when a regulation deprives an owner of *all* economically beneficial uses of his land" the taking is referred to as "categorical" and compensation is mandatory.  *Id.* at 330 (2002); *see also id.* at 322-23.

"But a government regulation that merely prohibits ... certain private uses ... does not constitute a categorical taking."  *Tahoe-Sierra Preservation Council,* 535 U.S. at 322-23.  When a regulatory taking is "[a]nything less than a complete elimination of value, or a total loss," *i.e.*, non-categorical, the analysis "entails complex factual assessments of the purposes and economic effects of government actions" as set forth in *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104 (1978).  *Id.* at 323, 330.

Alliance argues that this makes the *Penn Central* inquiry an "evidentiary" matter improper for disposition at the pleading stage.  This argument is unavailing in light of Ninth Circuit authority to the contrary.  *See Hotel & Motel Ass'n of Oakland v. City of Oakland,* 344 F.3d 959, 966 (9th Cir. 2003) (affirming dismissal on the pleadings); *Madera Irr. Dist. v. Hancock*, 985 F.2d 1397, 1399 (9th Cir. 1993) (affirming dismissal for failure to state a claim).

*Penn Central* instructs the courts to consider "[1] the regulation's economic impact on the claimant, [2] the extent to which the regulation interferes with distinct investment-backed expectations, and [3] the character of the government action." *Colony Cove Properties, LLC v. City of Carson,* 888 F.3d 445, 450 (9th Cir. 2018).  "[T]he first two *Penn Central* factors are the most important."  *Id.* at 454 n.9 (citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538-39 (2005)).

As relevant to the first *Penn Central* factor, Alliance alleges that the Ordinance deprives property owners "of their ability to secure a reasonable rate of return" on their

property.  (Compl. ¶ 55.)  It argues that that a loss of income or profits is sufficient to meet the economic impact factor under *Penn Central.*

Although a property owner may rely on lost income or profits to show that a regulation diminished property value, an allegation (or even proof) of income loss alone is not sufficient.  *Colony Cove Properties,* 888 F.3d at 451.  "[T]he mere loss of some income because of regulation does not itself establish a taking.  Rather, economic impact is determined by comparing the total value of the affected property before and after the government action."  *Id.*  Alliance does not allege that any of the affected properties have diminished in value.  This alone is sufficient to find that Alliance has failed to allege the requisite economic impact.

Moreover, "[n]ot every diminution in property value caused by a government regulation rises to the level of an unconstitutional taking."  *Colony Cove Properties,* 888 F.3d at 451.  Courts "start from the premise that the *Penn Central* factors seek to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain[,]" and focus on "the extent of the interference with rights in the parcel as a whole."  *Id.* at 451, 450.  If "an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety."[6]  *Id.* (quoting *Andrus v. Allard*, 444 U.S. 51, 65-66 (1979)).  The Ordinance diminishes less than one "strand" of property rights.  It does not take away the owners' right to rent out the property but merely imposes conditions on short-term rentals.  Accordingly, the first *Penn Central* factor weighs against finding that Alliance has stated a takings claim.

/ / / / /

---

[6]     "Although no litmus test determines whether a taking occurred, ... diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking."  *Colony Cove Properties,* 888 F.3d at 451.

As to the second *Penn Central* factor, Alliance alleged that historically many homes in the Coastal Overlay area of San Diego have been used as short-term rentals and that many owners purchased property in the area with the expectation of earnings from short-term rental.  (Compl. ¶¶ 50, 52.)

"To form the basis for a taking claim, a purported distinct investment-backed expectation must be objectively reasonable." *Colony Cove Properties,* 888 F.3d at 452. Even reliance on prior experience and court decisions may not amount to an objectively reasonable expectation.  *See id.* (finding no objectively reasonable investment-backed expectations despite two decades of experience in the same municipality and favorable appellate case citations).  Furthermore, "[u]nilateral expectations ... cannot form the basis of a claim that the government had interfered with property rights." *Bridge Aina Le'A, LLC v. Hi. Land Use Comm'n,* 950 F.3d 610, 633-34 (9th Cir. 2020).  "[W]hat is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property." *Id.* at 634.

The City argues that before the Ordinance short-term rentals were prohibited.  As a "permissive zoning ordinance," the municipal code prohibited any use that was not expressly allowed, and because the municipal code did not address short-term rentals, they were prohibited.  (ECF No. 3, Mot. at 19, 22.)  This argument is entirely based on a memorandum prepared by the City Attorney for the City Council in 2018.  (City RJN Ex. 5 ("Memorandum").)  The City requests the Court to take judicial notice of the Memorandum (City RJN at 5) and Alliance objects.  Although the Memorandum is a public record, and the Court can take judicial notice of its existence, the Court "cannot take judicial notice of disputed facts [it] containe[s]," *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018), much less can the Court adopt as fact the City Attorney's opinions expressed therein.

The City also argues that the alleged investment-backed expectations were not objectively reasonable because short-term rental regulation is not uncommon.  Alliance ignores the fact that other California municipalities have even more restrictive short-term

rental regulations including prohibition of short-term rentals.  *See, e.g., Rosenblatt*, 940 F.3d 439; *Ewing v. City of Carmel-by-the-Sea,* 234 Cal. App. 3rd 1579 (1991).  A reasonable investor would have adjusted his or her expectations considering the possibility of same regulation in San Diego.  *Cf. Colony Cove Properties,* 888 F.3d at 453 (investors must reasonably adjust their expectations).

Alliance does not address this authority but argues that the right to rent one's property by itself forms the basis of a reasonable investment-backed expectation.  This argument does not address the relevant regulatory environment and does not apply to the Ordinance at issue, which is limited to short-term rentals.  Accordingly, Alliance has not alleged that its members had objectively reasonable investment-backed expectations relative to short-term rentals when they purchased their properties.

Moreover, the second *Penn Central* factor does not only consider investment-backed expectations but, assuming the expectations were objectively reasonable, *the extent* to which regulation interfered with them.  *Colony Cove Properties,*888 F.3d at 450; *see also Bridge Aina Le'a,* 950 F.3d at 643 (limited duration of interference weighed against finding a taking).  The Ordinance does not prohibit short-term rentals but imposes a requirement that a host be present or, alternatively, that the host obtain a license.  Assuming *arguendo* that Alliance members' investment-backed expectations were objectively reasonable, the extent to which the Ordinance interferes with them is limited.  Accordingly, the second *Penn Central* factor also weighs against finding that Alliance has stated a takings claim.

Finally, the third *Penn Central* factor considers "the character of the government action" at issue.  *Colony Cove Properties,* 888 F.3d at 450.  In this regard,

> a taking may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.

*Id.* at 454.

The short-term rental requirements imposed by the Ordinance cannot be characterized as a physical invasion but a program adjusting the benefits and burdens of economic life.  As previously noted, the stated purpose of the Ordinance is to preserve the housing stock and the quality of life in residential neighborhoods.  (O-21305 at 2.)  Alliance argues that the Ordinance does not promote the common good because it applies in any area, whether residential or commercial, and the impact of short-term renters is similar to that of customers of commercial establishments.  Although the Ordinance does not state that it applies only to areas zoned for residential use, it is apparent that it does.  It is titled "Short-Term Residential Occupancy Regulations" (O-21305 at 2) and defines "residential occupancy" as the use or possession of a "dwelling unit."  (SDMC § 510.0102.)  A "dwelling unit" is used for "living purposes."  (*Id.* § 113.0103.)  Furthermore, Alliance does not address the additional purpose of preserving the existing housing inventory.  For the foregoing reasons, the third *Penn Central* factor weighs against finding that Alliance has stated a takings claim.

Based on the foregoing, Alliance has not alleged sufficient facts under *Penn Central* to state a takings claim on the face of the Ordinance.  As previously discussed, Alliance's as-applied challenge is based on the application of the Ordinance in the licensing lottery process, which operates "pursuant to the express provisions of the ORDINANCE. [*sic*]."  (Compl. ¶ 19.)  Accordingly, Alliance's as-applied challenge fails for the same reason as its facial challenge.

Because the Ordinance imposes a hosting or license conditions on short-term rentals rather than prohibiting them outright, leave to amend to state a takings claim would be futile.

/ / / / /

3.      Equal Protection and Substantive Due Process

Alliance claims that the Ordinance violates federal substantive due process rights of hosts and non-natural persons because it is arbitrary and discriminatory[7] (Compl. ¶ 47), and the Equal Protection Clause of the United States Constitution because it discriminates between owner-occupied and non-owner-occupied short-term rentals, and between short-term rentals and hotels and motels in commercial zones (*id.* ¶¶ 26-30). The City argues these claims should be dismissed.

Alliance did not respond to the City's substantive due process argument. Accordingly, this claim is dismissed as abandoned. *See Jenkins v. Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005). Alternatively, both claims are dismissed on the merits.

Alliance does not contend that it its members are being discriminated against as a part of a suspect or quasi-suspect class and admits that the rational basis scrutiny applies to the Ordinance. (Opp'n at 17.) Because Alliance's substantive due process and equal protection claims are based neither on discrimination against a suspect or quasi-suspect class nor on the deprivation of a fundamental right, the test for determining whether Alliance members were denied their equal protection or substantive due process rights is the same. *See Nelson v. City of Selma*, 881 F2d 836, 838-39 (9th Cir. 1989); *see also id.* at 839 ("interchangeable" standards). Accordingly, the Ordinance "should be upheld if it bears a rational relationship to a legitimate state interest." *Id.; see also San Francisco Taxi Coalition v. City and County of San Francisco*, 979 F.3d 1220, 1224 (9th Cir. 2020).

Under rational basis scrutiny, "we ask whether the regulation bears a rational relationship to a to a legitimate state interest." *San Francisco Taxi Coalition*, 979 F.3d at 1224; *see also Fields v. Palmdale Sch. Dist.,* 427 F.3d 1197, 1208 (9th Cir. 2005). When, as here, a regulation "affects only economic interests, ... the state is free to create

---

[7]      To the extent the Complaint also alleges that the Ordinance violates the guests' substantive due process rights (*see* Compl. ¶ 47), the claim is dismissed for lack of Article III standing. (*See* Section A *supra*.)

any classification scheme that does not invidiously discriminate." *San Francisco Taxi Coalition*, 979 F.3d at 1224.  The Court "must uphold the law if there are plausible, arguable, or conceivable reasons which may have been the reason for the distinction." *Id.* (quoting *Armour v. Indianapolis,* 566 U.S. 673, 681 (2012)).  Accordingly, the burden is on the party challenging a regulation "to negative every conceivable basis which might support it." *Id.* at 1225.  If the relationship is "at least fairly debatable, the [Ordinance] must be upheld." *Nelson,* 881 F.2d at 839.  Finally, the Court need not determine whether the same government purpose "can be better served by other means." *Ariz. Libertarian Party v. Reagan,* 798 F.3d 723, 732 (9th Cir. 2015).

As discussed in the context of the dormant Commerce Clause, the stated purpose of the Ordinance, preservation of existing housing inventory and quality of neighborhood life, are legitimate government purposes.  (*See* Section B.1. *supra* (citing O-21305 at 2.) These purposes are sufficient to show that the Ordinance has a substantial relation to the public health, safety, or welfare and is not clearly arbitrary and unreasonable.  Even if regulations "benefit some groups and burden others," as Alliance complains here (*see* Compl. ¶ 43), they must be upheld as long as there are legitimate reasons for the economic distinction. *San Francisco Taxi Coalition,* 979 F.3d at 1225.  Furthermore, based on the legislative findings stated in the Ordinance (*see* Section B.1 *supra* (citing O-21305 at 2)), it bears a rational relationship to these purposes.

The Ordinance on its face passes the rational scrutiny standard.  Alliance's as-applied challenge, based on the application of the Ordinance to the licensing lottery, operates as stated in the Ordinance.  (*See* Opp'n at 19.)  Accordingly, as-applied challenge fails for the same reason as the facial challenge.

Alliance has failed to state claims for violation of substantive due process and equal protection under the United States Constitution.  Because it is apparent on the face of the Ordinance and Alliance's as-applied challenge that leave to amend would not in the end aid in stating a claim, leave to amend is denied as futile. *See Fields,* 427 F.3d at 1209.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.   State Law Claims

All federal claims in this action have been dismissed without leave to amend.  The only basis for subject matter jurisdiction alleged in the notice of removal was federal question under 28 U.S.C. § 1331.  (ECF No. 1, Notice of Removal of Civil Action at 2.) Plaintiff does not allege any other grounds for federal jurisdiction.  The Court therefore declines to exercise supplemental jurisdiction over the remaining state law claim.  *See* 28 U.S.C. § 1367(c)(3).  Accordingly, the remained of this action is remanded to State court.

## III.   **Conclusion**

For the reasons stated above, the City's motion is granted insofar as it seeks dismissal of claims alleged under federal law, the balance of the action is remanded to State Court.

**IT IS SO ORDERED.**

Dated:  June 12, 2023

Hon. M. James Lorenz
United States District Judge

22cv1831-L-BGS